[No. 1193.]

## JOHN COMAITA, RESPONDENT, *v.* MATTHEW KYLE, APPELLANT.

SALE AND DELIVERY OF PERSONAL PROPERTY. — In the sale of a wood and coal ranch with the wood chopped, and coal burned, thereon, where there are no words or acts of delivery, and no possession taken of the personal property except the receipt of a bill of sale: *Held*, that a delivery of the bill of sale was not even a symbolical delivery of the personal property described therein.

IDEM — DISCHARGE OF WORKMEN — DECLARATIONS OF VENDOR. — The vendor's discharge of his workmen, and departure from the ranch, coupled with the declaration that he left the vendee in possession of everything, was not sufficient to constitute a delivery of the wood and coal.

IDEM — FRAUD AGAINST CREDITORS. — Every sale by a vendor of personal property in his possession, or under his control, unless the same is accompanied by an immediate delivery and continued change of possession, is, under the statutes of this state, conclusive evidence of fraud, as against the creditors of the vendor.

IDEM — CONSTRUCTIVE POSSESSION OF RANCH. — The bill of sale did not convey the vendor's title to the ranch, and as there was no proof that the ranch was inclosed, or had any established boundaries, the vendee did not have any constructive possession of any portion thereof.

IDEM — WHEN NONSUIT SHOULD BE GRANTED. — Upon a review of all the facts: *Held*, that the vendee had neither actual nor constructive possession of any part of the ranch (except a cabin thereon), or of the wood and coal, and that the motion for a nonsuit should have been granted.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The facts are stated in the opinion.

*H. K. Mitchell*, for Appellant:

*Baker & Wines*, for Respondent:

By the Court, LEONARD, J.:

This is an action to recover damages for the alleged conversion of personal property, to wit, about 15,000 bushels of charcoal and 450 cords of wood. The following uncontradicted facts were proven by plaintiff: On the fifteenth of November, 1882, one Locatelli was indebted to plaintiff in the sum of $2,120. On the evening of said day, defendant, the sheriff of

Eureka County, came to plaintiff's house and stopped all night. After making several inquiries, plaintiff concluded that defendant was on his way to Locatelli's ranch for the purpose of attaching the latter's property. Plaintiff waited until defendant had retired for the night, when he started for Locatelli's ranch. He arrived there about 7 o'clock in the morning. He took with him a man by the name of Allison, to assist him in settling with Locatelli. Plaintiff informed Locatelli that the sheriff was then on his way to attach him, and proposed to pay him $100 in coin, and satisfy his indebtedness for work done in burning coal and cutting wood, and cancel Locatelli's indebtedness to plaintiff, if Locatelli would sell him the ranch and the wood, and coal thereon. Locatelli accepted the proposition, and thereupon he executed to plaintiff the following instrument in writing: —

" $2,120.          ANTELOPE VALLEY, November 16, 1882.

" This is to certify that for and in consideration of the sum of two thousand and one hundred and twenty dollars, the receipt whereof is hereby acknowledged, I have this day sold, and do by these presents sell and deliver, to John Comaita, a certain wood and coal ranch on which I now reside, situate west of Antelope Valley, and immediately west of Antelope Valley, and immediately west of the old Lamaroux ranch, together with the wood chopped, and piled or pitted, and all the coal burned, with two horses and one wagon, to have and to hold the same for himself and his heirs forever.

" Witness:                          GIACOMO LOCATELLI.
    " I. J. WILSON,
    " JOEL ALLISON."

After executing the above instrument, Locatelli and plaintiff were informed that the former must discharge his hired men, go away from the ranch, and leave plaintiff in charge and possession of everything. This was done. Locatelli remained away about ten days. Before or after the execution and delivery of the certificate or bill of sale, Locatelli did nothing relating to the wood or coal other than as above stated. There were no words or acts of delivery of either wood or coal. Plaintiff did nothing to take possession of either, except to receive the bill of sale. The coal was in six or seven piles, some dis-

tance from each other, and from the cabin where the bill of sale was executed and delivered to plaintiff. Plaintiff did not go to the stacks of coal or piles of wood, and had never before that morning been on the ranch or seen the property. Nearly all the wood and coal were in the cañon near the cabin, and nearly all in plain sight of the cabin. In about an hour after the purchase had been made, and Locatelli had left the cabin and ranch, defendant arrived, and levied his writ of attachment upon the ranch, wood, coal, etc., in question, in the case of *Tognini* v. *Locatelli.* At that time plaintiff had done nothing in relation to the property, except to receive the bill of sale. Before the levy, plaintiff showed defendant the bill of sale as the source of his claim and title, and notified him that he had bought all the property described therein from Locatelli, and had paid for it. Immediately after the levy, plaintiff left the ranch, and has never returned. Plaintiff introduced no proof as to the extent of the ranch, or that it was inclosed. The bill of sale was executed and delivered to plaintiff in the cabin which belonged to Locatelli, and which was occupied by him and his men when working on the ranch. It is not disclosed whether or not the land is a portion of the public domain.

Upon the above facts shown by plaintiff, defendant moved for a nonsuit upon the following grounds: —

"*First.* That the uncontroverted case made by plaintiff constituted a fraud in law.

"*Second.* That from the testimony it appears that plaintiff claims the personal property described in the complaint by virtue of a pretended purchase of real property upon which the personalty is situated, and that the instrument in writing under which he claims the real property is insufficient to convey any right or possession to the real property, and is void.

"*Third.* That there is not any evidence that the ranch was inclosed by any actual inclosure, or anything equivalent thereto, to show the extent of plaintiff's dominion or control of the same, as claimed by him, or otherwise.

"*Fourth.* That the testimony shows that plaintiff relies upon a constructive possession of the land where the coal was pitted and the wood piled to make out his possession of the personal property, in which case he can only recover by the introduction, as evidence, of such a deed as will vest in him a legal seisin and possession, and that the written instrument

introduced did not convey, and does not convey, to him any right of possession; the same being in law a simple parol conveyance of land, and insufficient to convey personal property thereon as against creditors.

"*Fifth.* That plaintiff has not shown any delivery of the personal property, or any change of the possession thereof."

Did the court err in denying defendant's motion? Was there sufficient proof of delivery and change of possession of the wood and coal to entitle plaintiff to the finding of a jury upon those questions? There were no words or acts of delivery of the personal property, and plaintiff did not do anything to take possession of the wood and coal, except to receive the bill of sale. A delivery of the bill of sale was not even a symbolical delivery of the personal property described therein. (*Carter* v. *Willard*, 19 Pick. 12; *Dempsey* v. *Gardner*, 127 Mass. 382.) Certainly, Locatelli's discharge of his workmen did not constitute a delivery or change of possession of the wood and coal; nor did Locatelli's departure have that effect, although coupled with the general declaration that he left plaintiff in possession of everything. Undoubtedly, plaintiff might have taken possession of the personal property in some proper manner before the levy, and, had he done so, there would have been a complete delivery and change of possession, as was held by this court in *Gaudette* v. *Travis*, 11 Nev. 157. But the mere departure of the vendor, together with the execution and delivery of the bill of sale, did not have that effect. Those acts would not have constituted a sufficient delivery and change of possession if Locatelli had sold the personal property only. In that case, considering the character of the property, plaintiff would not have been obliged to remove it, but it could have been delivered, and the pits of coal and piles of wood could have been marked in plaintiff's name. Indeed, counsel for respondent do not claim that prior to the levy there was a sufficient delivery and change of possession of the wood and coal, independently of the sale, surrender, and taking possession of the ranch. It is said, however, that as between the vendee of personal property and an attaching creditor of the vendor, the former has a reasonable time in which to take possession, and that whether plaintiff had such reasonable time, prior to the attachment, was a question for the jury to decide.

The statute declares that every sale made by a vendor of

goods and chattels in his possession or under his control, unless the same be accompanied by an immediate delivery and continued change of possession of things sold, shall be conclusive evidence of fraud as against the creditors of the vendor. In *Clute* v. *Steele*, 6 Nev. 335, this court decided that the statute is satisfied if there is a delivery at any time before the rights of creditors accrue, by attachment or otherwise. Undoubtedly, the acts that constitute a delivery and change of possession vary in different cases, and depend upon the character and quantity of the property sold. But in every case, when property is in the vendor's possession or under his control, as against his creditors, there must be a valid delivery before the writ of attachment is levied. In this case there was no conflict of evidence. It all showed that there was no delivery or change of possession of the wood or coal, independently of the sale, surrender, and taking possession of the ranch. It was, therefore, the duty of the court to grant a nonsuit, unless plaintiff's purchase and possession of the ranch constituted a sufficient possession of the property in dispute.

It is conceded that the bill of sale did not convey Locatelli's title to the ranch. There was no proof that the ranch was inclosed, or had any established boundaries. Plaintiff, then, did not have *constructive* possession of any portion thereof. (*Cannon* v. *Union Lumber Co.*, 38 Cal. 674; *Wolfskill* v. *Malajowich*, 39 Cal. 281; *Eureka M. Co.* v. *Way*, 11 Nev. 182.) He had *actual* possession of the cabin only. Since there was no delivery of the wood and coal, actual or symbolical, should we assume that the legal title to the ranch was in Locatelli, nothing less than a conveyance *by deed* of the real estate, with surrender of possession thereof to plaintiff, would have given the latter possession of the personal property thereon. (*Sharon* v. *Shaw*, 2 Nev. 292;[1] *Stephenson* v. *Clark*, 20 Vt. 627; *Shumway* v. *Rutter*, 8 Pick. 443.[2]) Plaintiff had neither actual nor constructive possession of any part of the ranch outside of the cabin, or of the wood and coal thereon, at the time of the levy, and the motion for nonsuit should have been granted.

In view of the conclusions reached, we deem it unnecessary to point out the errors contained in plaintiff's first and second instructions.

The judgment and order appealed from are reversed, and the cause is remanded.

---

[1]  15 Am. Dec. 546.          [2]  19 Am. Dec. 340.